UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>ANGEL ROLDAN,<br>   a/k/a "King Big A"<br><br>    Defendant | Criminal No. 19-CR-10459-RWZ |

**MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION**

The government submits the instant memorandum in support of its recommendation for **108 months of incarceration** for the Defendant, Angel ROLDAN, a/k/a "King Big A." This recommendation reflects the seriousness of the offense, the need for deterrence and punishment, and is sufficient but no greater than necessary to accomplish the goals of sentencing.

**THE ADVISORY SENTENCING GUIDELINES**

The government disagrees with the offense level calculation provided U.S. Probation, which calculated the offense level in the final Presentence Report to be 27 (PSR ¶¶106-134). The government's calculation stated a total offense level of 29 (D. 1632). With a criminal history score of 7, the criminal history category is IV (PSR ¶¶ 144-145), the guideline sentencing range ("GSR") calculated by Probation is 100 to 125 months (PSR ¶190).

Under the government's calculation of offense level 29, with criminal history category IV, the GSR would be 121 to 151 months.[1]

---

[1] The government notes that its calculation and recommendation in the Plea Agreement did not anticipate the additional three points relating to the federal assault case while incarcerated.  See PSR ¶143. With the government's offense level calculation of 29, and criminal history category III, the GSR would be 108 to 135, which correlates to the 108 months set as the high-end of the sentencing range in the Plea Agreement (D. 1632).

1

The parties have agreed to a binding sentencing range of 63 to 108 months (D. 1632) under Fed. R. Crim. P. 11(c)(1)(C).

## ARGUMENT

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). Among those factors are the "nature and circumstances of the offense," promoting respect for the law, and providing just punishment. See 18 U.S.C. § 3553(a)(2)(A). The sentence must also afford "adequate deterrence" for both the defendant and others. See 18 U.S.C. § 3553(a)(2)(B) (the court may impose a sentence "to afford adequate deterrence to criminal conduct"). Lastly, the sentence must protect the public from the further crimes of the Defendant, and the violence that the Defendant brought to bear through his membership in the Latin Kings. See 18 U.S.C. § 3553(a)(2)(C) ("protect the public from further crimes of the defendant"). Consideration of the § 3553(a) factors demonstrates that a sentence of 108 months is sufficient, but not greater than necessary, to meet the goals of sentencing.

### A.    Nature and Circumstances

This Court is familiar with the nature of the Latin Kings enterprise and the violent conduct committed by its members. The sentence range contemplated by the Plea Agreement reflects the Defendant's role in the management and organization of the Latin Kings, which targeted cooperating witnesses, and sought to instill fear and enforce a code of silence concerning crimes committed by its members. See PSR ¶¶45-102. Among this group, the Defendant served as Cacique, or second-in-command of the State of Massachusetts, issuing directives, and organizing the gang's violence as part of the larger chain of command. See PSR ¶45.

Given the sprawling membership, and numerous individuals at issue, the Defendant was particularly concerned with those believed to be cooperating with the government. See PSR ¶¶.

2

Throughout the investigation, the Defendant was involved in various violent acts of the gang. In particular, the Defendant ordered other members to inflict violence.

Victim 34 was targeted for perceived cooperation with law enforcement; the Defendant ordered that he be attacked. See PSR ¶¶50-56.  The Defendant tasked others in the chain of command (codefendants COTTO and I. RODRIGUEZ) with ambushing and attacking Victim 34 during a meeting during which Victim 34 would not suspect that he would be assaulted. According to the recordings, the Defendant acquired "paperwork" related to Victim 34's perceived cooperation with law enforcement and disseminated it to other Latin Kings who were then tasked by the Defendant with coordinating the violence. See PSR ¶50.  The Defendant is referenced by the other members are being concerned with ensuring the attack is completed properly. See PSR ¶52 ("I understand where Big A's coming from- he wants to make sure it's done, and you know, have it seen done, you know what I mean?") ("spoke to Big A the other day, and he ain't on that, you know? He's like "I just want that nigga blown up, and T'd,").

The Defendant also orchestrated a conspiracy to assault Victim 5 as well.  See PSR ¶¶57-66. In the various recordings generated in this case, the Defendant is identified as having obtained paperwork relating to Victim 5's cooperation. See PSR ¶57.  Victim 5 was incarcerated and the order was then transmitted to Latin Kings members in the Department of Corrections, who then discussed the order to terminate Victim 5 in greater detail. See PSR ¶¶60, 61, 62, 63, 64 ("W. PEGUERO replied, 'Big A spoke to Ace yesterday and Ace called me and talked to confirm it and Ace wants to make sure niggas seen paperwork first before he makes something happen up there.' On that same date, PALACIOS sent court paperwork to CW-3 who was directed to forward it to F. LOPEZ."), 65.  This is to say nothing of the additional incidents not specifically identified as grouped criminal conduct that occurred during the Defendant's leadership of the Massachusetts Chapter. See PSR ¶¶80-84 (Victim 19), 85-89 (Victim 1), 90-95 (Victim 14 and Victim 15).

Beyond the leadership and orchestration of violence committed by the Latin Kings, the Defendant also sold approximately 100 grams of fentanyl, and a firearm and ammunition to a cooperating witness. In sum, the Defendant was a leader in a violent drug distribution organization, and personally discussed serious violent incidents taking place.  The nature and circumstances of the Defendant's crimes and his role in leading this violent enterprise negatively affected the community he lived and the various persons who were attacked.  All told, the nature and circumstances justify a sentence of 108 months.

  B.  **Criminal History**

The Defendant has a lengthy criminal history that commenced early with multiple convictions for armed robbery, carjacking and firearms offenses in his teenage years. See PSR ¶¶136 (receiving stolen motor vehicle), 137 (receiving stolen motor vehicle that was previously carjacked), 138 (armed carjacking, and firearm possession), 139 (armed robbery and ABDW of a pizza delivery driver and convenience store), 140 (receiving stolen motor vehicle).

The Defendant was then convicted in 2006 of conspiracy to distribute cocaine base and sentenced to 68 months of incarceration. See PSR ¶142. This prosecution and investigation targeted members and associates of the Latin Kings.

While serving his federal sentence, the Defendant violently attacked another inmate.  The Defendant held the victim "to the ground; striking him repeatedly with fists and a padlock that was attached to the end of a belt. According to the investigative material, it appears this assault was motivated by an unpaid debt." PSR ¶143.  With such a violent criminal history, persistent gang membership, and his directing violence while serving as a leader of a violent criminal enterprise, the Court should impose the 108 month sentence recommended by the government.

  C.  **Public Protection and Deterrence**

Given the organized violence and drug trafficking at issue in this case, the Court must

4

ensure that the Defendant is specifically deterred from committing crimes in the future and ensure that the public recognizes such crimes merit serious punishment as well.  As a leader of the Latin Kings, responsible for directing violence against persons believed to be cooperating with law enforcement, and distributing drugs, the Defendant's role merits a significant sentence.

The Defendant has a prior federal conviction related to a prior Latin Kings investigation, and other serious violent criminal convictions, including the assault of another inmate with a padlock while serving his federal prison sentence.  Those prior sentences did not deter him, and shortly after release the Defendant rejoined the Latin Kings and ascended to leadership.  Indeed, throughout the investigation multiple recordings were made of the Defendant referring to potential federal prosecution of the Latin Kings criminal enterprise during meetings with other leaders and members.  See e.g., D. 12-1, p. 56 ("We all gonna be fucking in an indictment. I'm gonna be down for a RICO. You gonna be down for a RICO. You gonna be down for a RICO. We all gonna be down.").  As such, it is necessary to impress upon the Defendant that leadership and continued association with the Latin Kings, destruction of the community through the distribution of cocaine base, and directing acts of violence on behalf of the organization is serious and is unacceptable in the future. A sentence of 108 months is one that will specifically deter the Defendant from assisting this organization in the future and remove him from the enterprise for at least the period of incarceration.

General deterrence must also be considered, and this Court should be mindful of the message that the sentence will send to violent offenders, particularly gang leaders removed from the street who would direct others to attacks persons who provide information to law enforcement. A 108-month sentence sends a message to leaders, gang members, and violent offenders that swift punishment and imprisonment for multiple years await them if they choose to organize and

supervise gang-members and facilitate the commission of violence.

Moreover, the Court must also take this opportunity to protect society from this Defendant and the potential for future crimes, punish him for the various violent acts that took place under his auspices, and for overseeing violence being committed against others on behalf of this violent organization. A 108-month sentence is the proper means to accomplish all these goals of sentencing.

## CONCLUSION

Due to the nature and circumstances of the crime, and because deterrence (both general and specific), respect for the law, and just punishment are all critical sentencing factors for this Defendant, the Court should impose a sentence of 108 months.

Respectfully submitted,

NATHANIEL R. MENDELL,
Acting United States Attorney

By:

*/s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3674

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: July 20, 2021

*/s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney

6